**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**


DEBORAH HUNLEY,

      Plaintiff,

v.                            Case No.: 8:08-cv-2008-T-17AEP


HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY,

      Defendant.

_____/


<u>**ORDER ON DEFEDANT'S MOTION FOR FINAL SUMMARY JUDGMENT**</u>

      This cause comes before the Court on Defendant's Motion for Final Summary Judgment

and Plaintiff's Response thereto (Doc. 21 and 27). For the reasons set forth below, Defendant's

Motion for Final Summary Judgment is **GRANTED**.


<u>**PROCEDURAL HISTORY**</u>

      This action is a claim for relief under the Employee Retirement Income Security Act

(hereinafter "ERISA"), 29 U.S.C. § 1001 *et. seq*. This dispute arises from an employee benefit

plan (hereinafter "the Plan") sponsored by Sara Lee Corporation (hereinafter "Sara Lee"). On

October 7, 2008, Plaintiff, Deborah Hunley (herinafter "Hunley"), filed a Complaint against the

Defendant, Hartford Life and Accident Insurance Company (herinafter "Hartford"), alleging

failure and refusal to pay Long-Term Disability (herinafter "LTD") benefits under her employee benefit plan. (Dkt. 1). In the Complaint, Hunley contends that she qualifies for LTD benefits, and that Hartford has failed to pay these benefits since May 11, 2007. (Dkt. 1). The Complaint also argues that CNAGLA Group Life Assurance Company (herinafter "CNAGLA") is the previous owner of the Plan, and following Hartford's purchase of CNAGLA, there was no amendment to the Plan granting Hartford discretionary authority to administer claims under the Plan. (Dkt. 1). Hunley's Complaint requested this court grant LTD benefits from May 11, 2007 through the filing of this lawsuit. (Dkt. 1).

In response to the Complaint, Hartford filed its Answer and Affirmative Defenses on December 1, 2008. (Dkt. 8). Hartford asserts it had discretionary authority to administer the Plan. (Dkt. 8). Hartford also admits that Hunley was approved for benefits and was paid benefits until May 11, 2007. (Dkt. 8). However, Hartford contends Hunley is not entitled to LTD benefits under the plan because she is not "Disabled" as defined in the plan. (Dkt. 8). Hartford argues that Hunley is able to perform the essential duties of "any occupation" as defined in the Plan, and therefore, she is not entitled to LTD under the Plan. (Dkt. 8).

Hartford then petitioned the Court to Amend its Answer and Affirmative Defenses and for Leave to Assert Counterclaim. (Dkt. 14). The Court granted this motion. (Dkt. 15). In its Amended Answer and Affirmative Defenses, Hartford again renewed its claim that it had discretionary authority to administer the Plan. (Dkt. 16). It also renewed its assertion that Hunley is not disabled as defined in the plan, and she is not entitled to LTD since she is able to perform essential duties of "any occupation" for which she was qualified. (Dkt. 16). Furthermore, Hartford filed a Counterclaim alleging recovery for overpayment of benefits. (Dkt.

16).  Hartford argued that Hunley received Social Security benefits while also receiving benefits under her Hartford plan.  (Dkt. 16).  However, Hunley never responded to Hartford's counter-claim, and this Court entered a default judgment against Hunley on March 25, 2010.  (Dkt. 34).

On November 10, 2009, Hartford filed its Motion for Final Summary Judgment.  (Dkt. 21).  In the motion, Hartford argues that there are no genuine issues of material fact in the Administrative Record, and it is entitled to Summary Judgment as a matter of law because Hunley is not disabled under the Plan since she can perform "any occupation."  (Dkt. 21).  In addition, Hartford asserts its determination under the Plan is subject to a deferential arbitrary and capricious standard of review because it had discretionary authority to administer the Plan.  (Dkt. 21)  Although Hunley's plan was originally with CNAGLA, Hartford contends that it purchased 100% of  CNAGLA stock and the purchase included all rights and obligations of CNAGLA policies, including the Hunley policy.  (Dkte. 21, Exhibit B). Thus, Hartford argues it acquired discretionary authority to administer the Plan.  (Dkt. 21, Exhibit B).  Alternatively, Hartford argues that even if this Court were to hold it did not have discretionary authority to administer the Plan, it acted as a "plan fiduciary" and, therefore, the discretionary authority to determine Hunley's benefits under the Plan flowed from its fiduciary capacity.  (Dkt. 21).  In applying the arbitrary and capricious standard of review, Hartford asserts that there was a reasonable basis for its determination to deny Hunley LTD benefits under the "Occupational Qualifier" definition of the Plan.  Hartford asserts that the evidence in the Administrative Record shows Hunley was capable of performing "any occupation" as defined by the Plan because she qualified for several jobs that accommodated her medical restrictions. (Dkt. 21).  Hartford also argues that its decision to deny Hunley benefits was not tainted by self-interest since it promptly approved

Hunley for benefits under the "Occupational Qualifier" definition of the Plan; it continued to pay benefits until its review was complete; and it granted Hunley's counsel numerous extensions to submit evidence in support of her appeal. (Dkt. 21) Hartford also renewed its motion for judgment on the overpayment of benefits; however, as stated *supra*, a default judgment was entered on this issue, and therefore, it will not be addressed any further. (Dkt. 34). In sum, Hartford's Motion for Final Summary Judgement requests this court apply the arbitrary and capricious standard of review and affirm Hartford's decision to deny Hunley LTD benefits. (Dkt. 21).

Hunley filed a response to Hartford's Motion for Final Summary Judgment on December 15, 2009. (Dkt. 27). In her Memorandum in Oppostion to Defendant's Motion for Final Summary Judgment, Hunley argues that Hartford is not entitled to Final Summary Judgment because Hartford's rejection of her LTD benefits was "wrong" and unreasonable in light of the fact that her medical condition prevents her from performing "any type of work." (Dkt. 27). Additionally, Hunley contends that Hartford did not have discretionary authority to administer the plan, and therefore, a *de novo* standard of review applies. (Dkt. 27). Hunley argues that Hartford's purchase of CNAGLA only proves that they were a successor-in-interest of the Plan not that it has express discretionary authority to administer the Plan. (Dkt. 27). Hunley asserts that under a *de novo* standard Hartford's decision to deny Hunley LTD benefits was "wrong." (Dkt. 27). Hunley argues that the Administrative Record is replete with evidence showing her medical condition impairs her presently and on a permanent basis. (Dkt. 27). Alternatively, Hunley argues that even if this Court finds Hartford had discretionary authority to determine LTD benefits under the Plan, its decision to deny Hunley LTD benefits was arbitrary and

capricious because no reasonable basis existed for denying the decision. (Dkt. 27). Hunley asserts there are several doctors' reports in the Administrative Record showing that her medical condition prevents her from performing "any occupation." (Dkt. 27). Furthermore, Hunley contends this Court should consider Hartford's conflict of interest as a factor in makings its decision. (Dkt. 27). Hunley argues that Hartford's position as a professional insurance company offers it incentive to deny claims and, therefore, presents a conflict of interest. (Dkt. 27). In sum, Hunley requests this Court reverse Hartford's decision to deny LTD benefits under an ERISA *de novo* standard of review because Hartford's decision was "wrong" since the Administrative Record indicates Hunley is disabled. (Dkt. 27).

## STATEMENT OF FACTS

Hunley began working for Sara Lee as a Sales Associate. (Dkt. 21, Exhibit 1, AR–0001-0004). Hunley began in this capacity on June 1, 1990. (Dkt. 21, Exhibit 1, AR-0001). As part of her employment with Sara Lee, Hunley was eligible and participated in a LTD Plan – Group Policy No. SR-83141256. (Dkt. 21). The Plan was originally administered by CNAGLA. (Dkt. 21, Exhibit 2). However, Hartford purchased 100% of the issued and outstanding stock of CNAGLA on November 30, 2003. (Dkt. 21, Exhibit B). According to the terms and conditions of the Stock Purchase Agreement and other related transaction documents, Hartford acquired rights and obligations of policies underwritten by CNAGLA, including Hunley's policy. (Dkt. 21, Exhibit B). The specific language of the Plan states in part:

> The plan administrator and other plan fiduciaries have discretionary authority to determine Your eligibility for and entitlement to benefits under the policy. The plan administrator has delegated sole discretionary authority to CNA Group Life Assurance

Company to determine Your eligibility for benefits and to interpret the terms and provisions of the plan and any policy issued in connection with it.

(Dkt. 21, Exhibit 2, P-029).

On October 25, 2004, Hunley ceased employment with Sara Lee due to limitations caused by lumbar degenerative disc disease and osteoarthiritis of the hands. (Dkt. 21, Exhibit 1, AR-0001). Hunley began suffering from pain in her lower back around October 19, 2004, due to an unknown cause. (Dkt. 21, Exhibit 1, AR-0349). The osteoarthiritis in her hands was a secondary diagnosis. (Dkt. 21, Exhibit 1, AR-0011). Hunley's position as a Service Associate required frequent standing, walking, bending, reaching, pushing, pulling and driving. (Dkt. 21, Exhibit 1, AR-0013-0014).

Hunley's back and hand condition caused her to file an initial claim for LTD benefits in January of 2005. (Dkt. 21, Exhibit 1, AR-0001-0004). Hunley's doctor, Dr. Raphael Orenstein, submitted a Medical Assessment Tool as part of Hunley's claim. (Dkt. 21, Exhibit 1, AR-0004). Dr. Orenstein stated that Hunley's working restrictions began on October 28, 2004. *Id.* As a result of Dr. Orenstein's restrictions, Hunley could not perform her "Regular Occupation,"[1] as defined by the Plan. (Dkt. 21, Exhibit 1, AR-0012). After satisfying the "Elimination Period" under the Plan, Hartford approved Hunley for benefits effective April 28, 2005. (Dkt. 21, Exhibit 1, AR-0022-0023).

Prior to Hunley's approval, Hunley underwent surgery to help improve her back condition. (Dkt. 21, Exhibit 1, AR-0486). On February 21, 2005, Hunley had a posterolateral lumbar fusion. *Id.* Following the surgery, Hunley reported feeling "very little back pain," but

[1] Regular Occupation as defined by the Plan means the occupation that "You are performing for income or wages on Your Date of Disability. It is not limited to the specific position You held with Your Employer." (Dkt. 21, Exhibit 2, P-028).

she complained of feeling leg pain, and a warm "burning" sensation in her left foot. (Dkt. 21, Exhibit 1, AR-0359).

In September 2005, Dr. Orenstein stated that Hunley was recovering from her lumbar fusion and could not perform full-time work that involved frequent standing, walking, bending, reaching, pushing and pulling, and moderate driving. (Dkt. 21, Exhibit 1, AR-0006). Over the next year, Hunley's back condition continued to improve. (Dkt. 21, Exhibit 1, AR-0348-0499).

On April 12, 2006, Hunley had surgery on her left thumb. (Dkt. 21, Exhibit 1, AR-0491). On April 25, 2006, Dr. Barrie noted that the paresthesias in Huley's fingers had resolved, and she was able to control the pain with Oxycodone. (Dkt. 21, Exhibit 1, AR-0411). On May 23, 2006, Dr. Barrie noted that the numbness and tingling in Hunley's fingers had completely resolved. (Dkt. 21, Exhibit 1, AR-0415). On August 25, 2006, Dr. Orenstein noted that Dr. Barrie had performed surgery on Hunley's hand, and his impression was that it was going well. (Dkt. 21, Exhibit 1, AR-0500).

In August 25, 2006, Hunley again visited Dr. Orenstein and complained of back pain. (Dkt. 21, Exhibit 1, AR-0500). However, on her visit of September 29, 2006, she indicated that her back pain was less, and she had done a lot of walking when she was on a trip in Las Vegas. (Dkt. 21, Exhibit 1, AR-0503).

In November 2006, Hartford notified Hunley that it was investigating whether she would qualify for LTD benefits under the "Occupational Qualifier" definition. (Dkt. 21, Exhibit 1, AR-0040-0041). Hunley's eligibility for benefits under the "Regular Occupation" definition of "disability" was set to expire on April 28, 2007. (Dkt. 21, Exhibit 1, AR-0041, 0047, Exhibit 2, P-14). The Plan defines Long Term "disability" as:

*Disability* or *Disabled* means that *You* satisfy the Occupation Qualifier or the Earnings Qualifier[2] as defined below:

**Occupation Qualifier:**

*Disability* means that during the *Elimination Period* and the following 24 months, *Injury or Sickness* causes physical or mental impairment to such a degree of severity that You are:

1)  continuously unable to perform the *Material* and *Substantial Duties of Your Regular Occupation*; and

2)  not *Gainfully Employed.*

After *LTD Monthly Benefits* has been payable for 24 months, *Disability* means that *Injury or Sickness* causes physical or mental impairment to such a degree of severity that *You* are:

1)  continuously unable to perform any occupation for which *You* are or become qualified by education, training or experience; and

2)  not *Gainfully Employed.*

(Dkt. 21, Exhibit 2, P- 014) (emphasis in original)

After April 28, 2007, Hartford continued to pay benefits to Hunley while it evaluated her eligibility for LTD benefits under the "Occupational Qualifier" definition. (Dkt. 21, Exhibit 1, AR-0046-0049). On May 11, 2007, Hartford informed Hunley that as of April 28, 2007, she was no longer eligible for benefits under the Plan because she did not meet the "Occupational Qualifier" definition of "disabled." *Id.* Hartford stated its decision was based on: (a) medical records and statements from Dr. Orenstein (Orthopedist); (b) an MRI performed by Dr. Robert J. Wilson (Orthopedic Surgeon); (c) Operative Reports from Drs. Dimming (Orthopedic Surgeon) and Wilson; (d) physical therapy reports from Dr. Thomas Dimming; and (e) Hunley's work and

_____

[2] Hunley was not evaluated under the "Earnings Qualifier" portion of the Disability definition in the Plan because she was not "Gainfully Employed" at the time of the evaluation. (Dkt. 21)

educational history provided by Hunley and Sara Lee. *Id.* Specifically, Hartford referenced Dr. Orenstein's April 11, 2007, letter indicating that Hunley's permanent restrictions included:

> a) sitting for thirty (30) minutes with frequency of breaks every 15-20 minutes; (b) walking for thirty (30) minutes; (c) standing for thirty (30) minutes; (d) lifting and carrying up to ten (10) pounds occasionally; (e) engaging in fingering/handling occasionally; and (f) occasionally reaching at her waist.

(Dkt. 21, Exhibit 1, AR-0046-0049).

Hartford submitted Dr. Orenstein's restrictions to a Vocational Specialist who performed an Employability Assessment. (Dkt. 21, Exhibit 1, AR-0059-064). The Employability Assessment found that Hunley's capabilities, limitations and vocational background qualified her for positions as:

| | |
|---|---|
| Customer-Complaint Clerk | Median Hourly Wage - $13.10 |
| Reader | Median Hourly Wage - $10.81 |
| Information Clerk | Median Hourly Wage - $10.19 |

(Dkt. 21, Exhibit 1, AR-0050-0064).

Hartford also informed Hunley of her right to an administrative appeal. (Dkt. 21, Exhibit 1, AR-0049).

On June 7, 2007, Hunley's attorney advised Hartford that Dr. Orenstein would be modifying his April 11, 2007, report. (Dkt. 21, Exhibit 1, AR-0070). However, the Administrative Record contains no report modifying Dr. Orenstein's April 11, 2007, findings. (Dkt. 21, Exhibit 1, AR-0505) (AR-0505 is the last page of the AR record, and there are no modified reports found in the AR or after AR-0505).

On January 7, 2008, Hunley filed her appeal. (Dkt. 21, Exhibit 1, AR-0082-0085). As support for her appeal, Hunley filed additional medical records from Dr. Sara Ringle, Dr. Dimming, Dr. Orenstein, and an EKG. (Dkt. 21, Exhibit 1, AR-0086-0145). In addition to medical records, Hunley made three primary arguments on appeal: 1) She claimed Dr. Orenstein was not called to ascertain whether his restrictions would permit full-time work over a full-time work week, or to determine what effects Hunley's medication would have on her ability to work; 2) She claimed there was no consideration to the vocational impact of her medications; and 3) She used the "Earnings Qualifier" definition to argue that that the jobs cited in the Employability Assessment were insufficient because they did not pay 80% of her monthly earnings. (Dkt. 21, Exhibit 1, AR-0082-0085).

On appeal, Hartford submitted Hunley's medical records to Dr. Kenneth J. Kopacz, an Independent Medical Consultant who is Board Certified in Orthopedic Surgery, for a comprehensive case review. (Dkt.1, Exhibit 1, AR-0150, AR-0345-0347). Hartford requested that Dr. Kopacz contact Hunley's treating physicians to discuss her medical condition. (Dkt. 21, Exhibit 1, AR-0148-0149, AR-0347). Dr. Kopacz made several attempts to contact Hunley's treating physicians, but they never returned his phone calls. (Dkt. 21, Exhibit 1, AR-0345). Dr. Kopacz concluded that as of May 11, 2007[3] Hunley presented with functional impairments that included pain with activity and some limitation in her lower extremity strength, restrictions from pushing, pulling or lifting more than ten (10) pounds, and restrictions from bending and twisting. (Dkt. 21, Exhibit 1, AR-0346). In addition, Dr. Kopacz concluded that Hunley would need to get out of her sitting position for breaks to stretch and change positions. *Id.* Based on his review

---

[3] Hartford contends that Hunley was required to establish her disability as of April 28, 2007, but Dr. Kopacz assessed her as of May 11, 2007.

of Hunley's medical records, Dr. Kopacz found that Hunley should be able to perform a "sedentary position" for eight (8) hours a day, forty (40) hours a week with breaks to stretch and get out of her sitting position, as needed. (Dkt. 21, Exhibit 1, AR-0347).

On March 13, 2008, Hartford denied Hunley's appeal based on the additional medical information submitted by Hunley, the report from Dr. Kopacz, and the Vocational Employability Assessment. (Dkt. 21, Exhibit 1, AR-0152-0154). Hartford also concluded that the "Earnings Qualifier" would not apply because Hunley was not "Gainfully Employed" at the time her disability determination was made. (Dkt. 21, Exhibit 1, AR-0340 – 0342).

## ERISA STANDARD OF REVIEW

This Court and other courts in this district have recognized that the typical standard of review for summary judgment motions does not apply in ERISA actions. *Phillips v. Metro. Life Ins. Co.*, 2008 U.S. Dist. LEXIS 31167 at *5 (M.D. Fla. March 31, 2008); *Providence v. Harford Life Ins. Co.*, 357 F. Supp. 2d 1341, 1342 n. 1 (M.D. Fla. 2005); (citing *Bendixen v. Stnadard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999). This is because the district court sits in more of an appellate capacity when reviewing ERISA claims. *Providence*, 357 F. Supp. 2d 1341, 1342 n. 1. The court's task in reviewing ERISA claims is limited to the administrative record that was available to the decision-maker. *Id.* Since no additional evidence is reviewed, the usual summary judgment standard, whether no genuine issue of material fact exists, does not apply. *Id.* Therefore, the Motion for Summary Judgment in an ERISA action acts as more of a final judgment. *Id.*

ERISA does not explicitly establish a standard of review applicable to a plan administrator's determination. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989). Instead, the Supreme Court in *Firestone* established a spectrum of standards ranging from *de novo* review when a plan administrator does not have discretionary authority to administer the plan, to arbitrary and capricious when a plan administrator does have discretionary authority. *Id.* at 114-15; *Maracek v. Bell South Servs.*, 49 F.3d 702, 705 (11th Cir. 1995). Following *Firestone*, the Eleventh Circuit crafted an additional heightened arbitrary and capricious standard for plan administrators who suffered from a conflict of interest. *Brown v. Blue Cross & Blue Shield*, 898 F. 2d 1556, 1566. Thus, the Eleventh Circuit had adopted three different standards of review for ERISA claims: (1) *de novo*, applicable where a plan administrator had no discretion in deciding claims; (2) arbitrary and capricious, applicable where the plan administrator had discretion in deciding claims and did not suffer from a conflict of interest; and (3) heightened arbitrary and capricious, applicable where the plan administrator had discretion but suffered from a conflict of interest. *HCA Health Servs. of Ga., Inc. v. E'ers Health Ins. Co.*, 240 F.3d 982, 993-94 (11th Cir. 2001); *Gilley v. Monsanto Co., Inc.*, 490 F.3d 848, 856 (11th Cir. 2007).

In *HCA*, the Eleventh Circuit modified the analysis under these three standards of review by using multiple steps to review plan administrator's claims. 240 F.3d at 993-94. The courts first review the Plan documents to determine whether the claims administrator has discretionary authority to administer the Plan. *HCA*, 240 F.3d at 993. If the court finds that the documents grant the claims administrator discretionary authority, the court applies the arbitrary and capricious standard of review. *Id.* This is because trust law applies a deferential standard when

an administrator has discretionary authority to administer the Plan.  *Firestone*, 489 U.S. at 111.

If the Plan administrator is not given discretionary authority, then the Court follows a six step

analysis.  *HCA*, 240 F.3d at 993-94.

> For simplicity, the Eleventh Circuit condensed the *HCA* six step analysis:
>
>  (1) Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
>
> (2) If the administrator's decision in fact is "de novo wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.
>
> (3) If the administrator's decision is "de novo wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).
>
> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.
>
> (5) If there is no conflict, then end the inquiry and affirm the decision.
>
> (6) If there is a conflict of interest, then apply heightened arbitrary and capricious review to the decision to affirm or deny it.

*Williams v. BellSouth Telecomm., Inc.*, 373 F.3d 1132, 1137-38 (11th Cir. 2004).  Although there

are some Eleventh Circuit cases which seem to indicate the six step analysis applies to all Plans,

whether they have discretionary authority or not[4], this analysis conflicts with *Firestone's*

mandate that a denial of benefits is "reviewed under a *de novo* standard *unless* the benefit gives

the administrator or fiduciary discretionary authority to determine eligibility for benefits or to

construe the terms of the plan."  *Firestone*, 489 U.S. at 115.

---

[4] *Williams*, 373 F.3d at 1137; *Rupple v. Hartford Life &Accident Ins. Co*., 340 Fed. Appx. 604, 611 (11th Cir. 2009).

After *HCA* and *Williams*, the Supreme Court decided *Metro. Life Ins. Co. v. Glenn*, -- U.S. --, 128 S. Ct. 2343 (2008). In *Glenn*, the Supreme Court clarified its position regarding an administrator or fiduciary operating under a conflict of interest. *Id*. at 2350. The Court found that a conflict "should be weighed as a 'factor in determining whether there is an abuse of discretion.'" *Id*. at 2350 (quoting *Firestone*, 489 U.S. at 115). The Court went on to state that *Firestone's* statement does not imply a change in the standard of review. *Id*. at 2350. Trust law still applies a deferential standard of review to the discretionary decision making of conflicted trustees, but the reviewing judge should take the conflict into account when determining substantive or procedural abuses of discretion. *Id*. at 2348. In determining the weight of the conflict of interest, the *Glenn* Court suggested that a conflict of interest is less important when an administrator takes active steps to reduce potential bias and to promote accuracy. *Id*. at 2351.

Following *Glenn*, the Eleventh Circuit has continued to uphold the six-step methodology for reviewing ERISA claims. *Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1196 (11th Cir. 2010) (citing *White v. Coca-Cola Co.*, 542 F.3d 848, 854 (11th Cir. 2008) which stated that although *Glenn* affects the sixth step of *Williams*, *Glenn* does not alter our six step analysis). However, the *Glenn* Court states that trust law still applies a deferential standard when an administrator has discretionary authority to administer the Plan. *Glenn*, 128 S. Ct. at 2350.

## DISCUSSION

### I. Hartford Had Discretionary Authority to Administer Hunley's Plan

The first question before this court is whether Hartford had discretionary authority to administer Hunley's claim. The court first reviews the Plan documents to determine whether the claim's administrator has discretionary authority to administer the Plan. *HCA*, 240 F.3d at 993.

Hartford's acquisition of CNAGLA gave it discretionary authority to administer the plan. (Dkt. 21, Exhibit B). In the ERISA context, a successor corporation that administers a Plan, "steps into the shoes" of its predecessor, and acquires the powers conferred by the Plan including the discretionary authority to administer the Plan. *Preite v. Charles of the Ritz Group, Ltd.*, 471 F. Supp. 2d 1271, 1282 (M.D. Fla. 2006). Proof of who is the Plan administrator may come from the Plan document, but may also come from the facts surrounding the Plan, even if the factual circumstances contradict the designation in the Plan. *Rosen v. TRW, Inc.*, 979 F.2d 191, 193 (11th Cir. 1992).

Hunley argues that the Plan must expressly grant the administrator discretionary authority. *Sullivan v. Continental Casualty Co.*, 2006 WL 2054085 (M.D. Fla. July 21, 2006). Furthermore, Hunley argues that a successor in interest must make an evidentiary showing sufficient to prove it has discretion to administer the plan and pay the claim. *Id*. at *12. However, Hunley's reliance on *Sullivan* is misplaced. The facts in the *Sullivan* case were markedly different from the ones before this Court. In *Sullivan*, the court found that there was an ambiguous relationship between Continental Insurance Company and Hartford. *Id.* at *12. The court found that: 1) an undated notice sent to the Plaintiff informing him that Hartford was responsible for communicating with plaintiff and paying his claim, and 2) an unidentified note at the top of plaintiff's claim were insufficient to show that Hartford had "stepped into the shoes" of Continental. *Id.* The court also found there were no affidavits showing Hartford purchased assets and liabilities of Continental's policies. *Id.* As such, the court found that Hartford did not provide enough evidence to demonstrate it had discretionary authority to administer the Plan. *Id.* at *13.

In this case, Hartford provided an affidavit from Leslie Stoler, In-House Counsel for Hartford. (Dkt.21, Exhibit B). Ms. Stoler's affidavit states Hartford purchased 100% of the CNAGLA stock on November 30,2003. (Dkt. 21, Exhibit B). Although the language of the Plan originally granted discretionary authority to CNAGLA, Hartford purchased the Plan and all of the rights and obligations to administer the Plan when it purchased all of CNAGLA's stock. (Dkt. 21, Exhibit B). Hartford "stepped into the shoes" of CNAGLA when it purchased 100% of its stock. (Dkt. 21, Exhibit B). Because Hartford purchased all of the rights and obligations of the Plan in the Stock Agreement, it acquired discretionary authority to administer the Plan.

## II. Applicable ERISA Standard of Review – Arbitrary and Capricious

The second question before this court is which ERISA standard of review to apply. Trust law applies a deferential standard when an administrator has discretionary authority to administer the Plan. *Firestone*, 489 U.S. at 111.

This Court has determined that Hartford has discretionary authority to administer the Plan. *See supra*. Trust law applies a deferential standard when an administrator has discretionary authority to administer the Plan. *Firestone*, 489 U.S. at 111. Where a trustee has discretion with respect to the exercise of power, the exercise of this power is not subject to control by the court except to prevent an abuse of discretion.[5] *Id*. A trustee's interpretation will not be disturbed if reasonable. *Id*. Since Hartford has discretionary authority to administer

---

[5] The arbitrary and capricious standard is used interchangeably with abuse of discretion in the Eleventh Circuit. *Jett v. Blue Cross & Blue Shield of Ala., Inc.*, 890 F.2d 1137, 1139 (11th Cir. 1989).

Hunley's Plan, this Court must apply the deferential arbitrary and capricious standard of review. *HCA*, 240 F.3d at 993.


### III. Hartford's Decisions to Deny Hunley Benefits was Reasonable

This Court must apply a deferential standard of review to Hartford's decision to deny Hunley LTD benefits, however, this Court must still determine if Hartford's decision was reasonable. *Cage v. Bruner*, 112 F.3d 1510, 1518-19 (11th Cir. 1997). When reviewing an administrator's decision under the arbitrary and capricious standard, the principles of trust law states that a trustee's interpretation should not be disturbed if it is reasonable. *HCA*, 240 F.3d at 994 (citing *Firestone*, 489 U.S. at 110-11). The court's review for reasonableness is limited to the facts that were before the administrator at the time the decision was made. *Jett*, 890 F.2d at 1139. The administrator's decision must be upheld under the arbitrary and capricious standard even if there is evidence that supports a contrary conclusion. *White v. Coca-Cola Co.*, 542 F.3d 848, 856 (11th Cir. 2008). If the court finds the administrator's interpretation is reasonable, then the court must uphold this interpretation even though the beneficiary's interpretation is also reasonable. *HCA*, 240 F.3d at 994.

Hartford argues that its decision was reasonable because the evidence shows that Hunley's medical condition did provide some restrictions and limitations, but those limitations did not continuously preclude Hunley from performing "any occupation" under the Plan. (Dkt. 21). Hartford specifically points to Dr. Orenstein's letter from April 11, 2007 which shows that Hunley's restrictions include:

a) sitting for thirty (30) minutes with frequency of breaks every 15-20 minutes; (b) walking for thirty (30) minutes; (c) standing for thirty (30) minutes; (d) lifting and carrying up to ten (10) pounds occasionally; (e) engaging in fingering/handling occasionally; and (f) occasionally reaching at her waist.

(Dkt. 21, Exhibit 1, AR-0046-0049). Hartford also points to the inclusion of an Employability Assessment, which used the restrictions and limitations given by Hunley's own physicians. (Dkt. 21, Exhibit 1, AR-0179-0181). Hartford argues that the Employability Assessment indicated that Hunley could perform positions consistent with her medical restrictions. (Dkt. 21, Exhibit 1, AR-0050-0060). Furthermore, Hartford argues that it conducted a thorough appeal and even hired an independent Orthopedic doctor, Dr. Kopacz, to review Hunley's file. (Dkt.21) Hartford asserts that Dr. Kopacz reviewed the totality of Hunley's medical record and determined that Hunley's restrictions were in line with Dr. Orenstein's April 11, 2007 restrictions. (Dkt. 21, Exhibit 1, AR-0345-0347). Hartford contends that its appeal review was reasonable and its original determination was correct. (Dkt. 21).

Hunley argues that she is not capable of performing "any occupation," let alone the occupations set forth by Hartford's Employability Assessment. (Dkt. 27). Hunley also argues that Dr. Orenstein, Dr. Barrie, and Dr. Dimming's all submitted documents that either expressly or implicitly indicate Hunley is permanently and indefinitely disabled - AR-0015, AR-0093-0094, AR-0182. (Dkt. 27). In addition, Hunley argues that Hartford did not even address the fact that her hand functionality restricts her from keyboard or repetitive hand use. (Dkt. 27).

Hunley's arguments do not persuade this Court. The three documents Hunley uses as evidence of her permanent disability do not indicate a permanent disability. (Dkt. 21, Exhibit 1, AR-0015, AR-0093-0094, AR-0182). 1) AR-0015 is the April 11, 2007 letter from Dr.

Orenstein. Dr. Orenstein states that the *restrictions* in the letter are permanent. (Dkt. 21, Exhibit 1, AR-0015) (emphasis added). Hartford included these *restrictions* in its determination to deny Hunley LTD benefits. (Dkt. 21, Exhibit 1, AR-0046-0049). 2) AR-0093-0094 is a documented visit with Dr. Sara Ringle. The document indicates that Hunley "has not been able to work," but it does not indicate that the doctor finds Hunley permanently disabled. (Dkt. 21, Exhibit 1, AR-0093-0094). 3) AR-00182 references Dr. Orenstein's permanent *restrictions*. (emphasis added). In addition, Hartford's decision indicates that it took account of Hunley's hand condition when its review stated, "do no keyboarding or repetitive hand." (Dkt. 21, Exhibit 1, AR-0183). Furthermore, even if this Court found there was evidence to the contrary, it would still be obligated to uphold Hartford's decision under the arbitrary and capricious standard of review. *White*, 542 F.3d 848, 856 (11th Cir. 2008).

Hartford's determination to deny Hunley LTD benefits is reasonable. The evidence indicates that Hartford denied Hunley benefits because she was not continuously unable to perform "any occupation." (Dkt. 21, Exhibit 1, AR-0046-0049). Hartford stated that its decision was based on: (a) medical records and statements from Dr. Orenstein (Orthopedist); (b) an MRI performed by Dr. Robert J. Wilson (Orthopedic Surgeon); (c) Operative Reports from Drs. Dimming (Orthopedic Surgeon) and Wilson; (d) physical therapy reports from Dr. Thomas Dimming; and (e) Hunley's work and educational history provided by Hunley and Sara Lee. (Dkt. 21, Exhibit 1, AR-0046-0049). In addition, Hartford's denial took Dr. Orenstein's April 11, 2007, permanent restrictions into account. (Dkt. 21, Exhibit 1, AR-0015). Moreover, Hartford submitted Dr. Orenstein's restrictions to a Vocational Specialist who determined that Hunley's capabilities, limitations and vocational background qualified her for positions as:

| Customer-Complaint Clerk | Median Hourly Wage - $13.10 |
| Reader | Median Hourly Wage - $10.81 |
| Information Clerk | Median Hourly Wage - $10.19 |

(Dkt. 21, Exhibit 1, AR-0050-0064).

Harford also submitted Hunley's appeal claim to an Orthopedic doctor for peer review. (Dkt. 21, Exhibit 1, AR-0150, AR-0345-0347). Dr. Kopecz performed a comprehensive review of Hunley's medical file. (Dkt. 21, Exhibit 1, AR-0345-0347). Hunley argues that a peer review is unreasonable when a peer physician ignores information about the beneficiary's ability to sit for only thirty (30) minutes at a time. *Lee v. Bellsouth Telecommunication*, 318 Fed. Appx. 829, 839 (11th Cir. 2009). However, the peer review in this case did not ignore information about Hunley's restrictions. (Dkt. 21, Exhibit 1, AR-0346). In fact, Dr. Kopecz specifically mentions Orenstein's letter in his comprehensive review. (Dkt.21, Exhibit 1, AR-0347). Dr. Kopacz also mentions Dr. Dimming's restrictions in his review. (Dkt. 21, Exhibit 1, AR-0346). Furthermore, Dr. Kopacz states, "claimant would need to be able to get out of her sitting position as needed for breaks to stretch and change position." (Dkt. 21, Exhibit 1, AR-0346). This statement indicates that Dr. Kopacz recognized Dr. Orenstein's restrictions and included them in his review. *Id.*

This Court must defer to Hartford's decision under the arbitrary and capricious standard of review. *HCA*, 240 F.3d at 994 (citing *Firestone*, 489 U.S. at 110-11). Hartford's decision to deny Hunley LTD benefits was based on the fact that Hunley was not continuously unable to perform "Occupational Qualifier." (Dkt. 21, Exhibit 1, AR-0046-0049). This decision was reasonable because it took into account Hunley's medical restrictions, an Employability

Assessment, a peer review and countless other medical documents. (Dkt. 21, Exhibit 1, AR-0046-0049, 0152-0154).

## IV. Hartford Did Not Abuse Its Discretion

In determining whether a decision is arbitrary and capricious, a court must weigh an administrator's conflict of interest "as a factor." *Glenn*, 128 S. Ct. at 2350 (quoting *Firestone*, 489 U.S. at 115. A conflict exists if the administrator of an ERISA plan is both evaluating claims and paying for benefits. *Firestone*, 489 U.S. at 105. Trust law still applies a deferential standard of review to the discretionary decision making of conflicted trustees, but the reviewing judge should take the conflict into account when determining substantive or procedural abuses of discretion. *Id*. at 2348. In determining the weight of the conflict of interest, the *Glenn* Court suggested that a conflict of interest is less important when an administrator takes active steps to reduce potential bias and to promote accuracy. *Id*. at 2351.

Hunley argues that Hartford has a conflict of interest because it is a professional insurance company. (Dkt. 27). Moreover, Hunley asserts Hartford's conflict of interest led to procedural irregularities in the administrative process including emphasizing certain medical reports, relying on non-treating physicians opinions over the opinions of the treating physician, and failing to adequately investigate Hunley's claim. (Dkt.27).

Hartford was both the administrator of Hunley's plan and paying benefits under the Plan. (Dkt. 21, Exhibit 2, P-001-037). Those circumstances present a conflict of interest. *See Firestone*, 489 U.S. at 105. Therefore, this Court must evaluate Hartford's conflict as a factor in determining whether or not its decision was arbitrary and capricious. *Glenn*, 128 S. Ct. at 2350 (quoting *Firestone*, 489 U.S. at 115.

Hartford took several steps to reduce potential bias and promote accuracy.  Hartford immediately began paying Hunley benefits under the "Regular Occupation" portion of the Plan.  (Dkt. 21, Exhibit 1, AR-0022-0023).  Hartford continued to pay those benefits while it reviewed Hunley's file for LTD benefits.  (Dkt. 21, Exhibit 1, AR-0047).   Although Hunley argues that Hartford emphasized certain medical records and did not adequately investigate Hunley's claim, Hartford used the restrictions from Hunley's own physician when it conducted its Employability Assessment.  (Dkt. 21, Exhibit 1, AR-0179-0181).  Hartford also conducted a comprehensive peer review by an Orthopedic Surgeon, using records from all of Hunley's treating physicians.  (Dkt. 21, Exhibit 1, AR-0345-0347).  Furthermore, Hartford offered Hunley's counsel numerous extensions to submit evidence in support of Hunley's appeal.  (Dkt. 21, Exhibit 1, AR-0078-0079, AR-0081).

After weighing Hartford's conflict of interest, this Court finds Hartford did not abuse its discretion.  Even though Hartford suffers from a structural conflict of interest, it took active steps to reduce potential bias during the procedural review of Hunley's file.  It paid benefits during its review of Hunley's file, it considered restrictions submitted by Hunley's treating physician, and it conducted a comprehensive peer review.  (Dkt. 21, Exhibit 1, AR-0047, 0179-0181, 0345-0347).  **Accordingly**, it is

**ORDERED** that Defendant's Motion for Final Summary Judgment is **GRANTED**.

The Clerk of the Court is directed to enter judgment for the Defendant and against the Plaintiff

on the Plaintiff's action.

**DONE** and **ORDERED** in Chambers at Tampa, Florida, this 26th day of April 2010.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

cc: All parties and counsel of record